**In re Mary CARILLI, a/k/a Mary Frances Carilli, a/k/a Mary Weiss, a/k/a Mary Wiese, Debtor.**

**Bankruptcy No. 881–82033–18.**

United States Bankruptcy Court, E.D. New York.

Sept. 30, 1986.

Sarisohn, Sarisohn, Carner, Steindler, Creditor & LeBow, Commack, N.Y., for debtor.

Mullen & Iannarone, P.C., Smithtown, N.Y., for creditor.

Edward Zinker, Smithtown, N.Y., trustee.

## DECISION & ORDER

C. ALBERT PARENTE, Bankruptcy Judge.

The debtor, Mary Carilli ("Carilli"), brought on a motion to reopen her Chapter 7 bankruptcy proceeding for the purpose of avoiding a judicial lien alleged to impair a claimed section 522(d)(1) exemption. The issue presented is whether the debtor has standing to bring an action under § 522(f) after she has sold the claimed exempt property.

### FINDINGS OF FACT

On June 15, 1981, the debtor filed a petition under Chapter 7 of the Bankruptcy Reform Act of 1978 (Code), unaware that Memberloan Plan, Inc. ("Memberloan") had on June 12, 1981, docketed a judgment on debtor's residential property at 125 Woodbury Road, Hauppauge, New York. The only judgment search made with regard to the debtor had been completed by June 5, 1981. The debtor remained unaware of the lien throughout the entire pendency of her case.

The schedules reveal that at the time of the petition debtor represented the value of the Woodbury Road residence to be $47,-000. The property was encumbered by a $41,000 mortgage. The schedules further disclose that the debtor availed herself of § 522(d)(1) to claim a $7,500 homestead exemption. The federal exemption was applicable to the debtor, because her case predates New York Debtor and Creditor Law § 284 (McKinney 1986) (pursuant to 11 U.S.C. § 522(b) New York domiciliaries may only exempt property in accordance with New York law).

On November 24, 1981, the debtor received a discharge of indebtedness in accordance with 11 U.S.C. § 727 and the case was duly closed on December 18, 1981.

In January, 1986, a title search of the Woodbury Road property was conducted in preparation for the voluntary sale of the property by Carilli. At that time she learned of the lien through a report issued by Security Title Guarantee Company, the company conducting the title search. The sale of the property went forth and was concluded on February 26, 1986.

On April 1, 1986, five weeks after the sale of the property, debtor moved to reopen her case and avoid the lien pursuant to §§ 350(b) and 522(f) of the Code.

### DISCUSSION AND CONCLUSIONS OF LAW

Memberloan opposes debtor's motion on two grounds: (1) the debtor lacks standing to seek relief under 11 U.S.C. § 522(f) and, (2) section 350(b) of the Code cannot be used to reopen a case five years after its closing. In arguing the latter issue, the judgment lien creditor espouses a minority viewpoint which holds to a narrow interpretation of section 350(b). *In re Smiley*, 26 B.R. 680 (Bankr.D.Kan.1982); *In re Andrews*, 22 B.R. 623 (Bankr.D.Del.1982); *In re Porter*, 11 B.R. 578 (Bankr.W.D.Okla. 1981); *In re Adkins*, 7 B.R. 325 (Bankr.S. D.Cal.1980). Memberloan asks the court to find that an action to avoid a lien is untimely if commenced after the discharge of the debtor. *In re Porter*, 11 B.R. 578, 581 (Bankr.W.D.Okla.1981). However, this court rejected that argument in *In re Dvoroznak*, 38 B.R. 178 (Bankr.E.D.N.Y.1984), as have the majority of bankruptcy courts which have litigated the issue. *In re Jent*, 37 B.R. 561 (Bankr.W.D.Ky.1984); *In re Guinther*, 40 B.R. 945 (Bankr.M.D.Pa. 1984); *Noble v. Yingling*, 29 B.R. 998 (D.Del.1983); *Beneficial Finance Co. of Va. v. Lazrovitch*, 47 B.R. 358 (E.D.Va. 1983); *In re Tarrant*, 19 B.R. 360 (Bankr. Alaska 1982); *In re Yazzie*, 24 B.R. 576 (Bankr. 9th Cir.1982); *Rheinbolt v. Credit Thrift of America, Inc.*, 24 B.R. 167 (Bankr.S.D.Ohio 1982); *In re Keller*, 24 B.R. 720 (Bankr.N.D.Ohio 1982); *In re Leeman*, 25 B.R. 180 (Bankr.E.D.Wis.1982); *Modern Supply Co. v. Lee*, 21 B.R. 774 (Bankr.E.D.Tenn.1982); *Russell v. United States*, 20 B.R. 537 (Bankr.W.D.Pa.1982); *Barner v. Associates Financial Services Co. of Wis.*, 20 B.R. 428 (Bankr.E.D.Wis. 1982); *Johnson v. First Merchants National Bank*, 18 B.R. 555 (Bankr.D.Md. 1982); *Schneider v. Beneficial Finance Co. of N.D.*, 18 B.R. 274 (Bankr.D.N.D.

1982); *Stephenson v. General Motors Acceptance Corp.*, 19 B.R. 185 (Bankr.M.D. Tenn.1982); *Towns v. Postal Finance Co.*, 16 B.R. 949 (Bankr.N.D.Iowa 1982); *Baskins v. Household Finance Corp.*, 14 B.R. 110 (Bankr.E.D.N.C.1981); *Associates Financial Services v. Swanson*, 13 B.R. 851 (Bankr.D.Idaho 1981); *Smart v. Avco Financial Services of Maricopa, Inc.*, 13 B.R. 838 (Bankr.D.Ariz.1981); *Gortmaker v. Avco Financial Services*, 14 B.R. 66 (Bankr.D.S.D.1981); *Bennett v. Commercial Credit Plan*, 13 B.R. 643 (Bankr.W.D. Mich.1981).

The weight of authority holds that absent a finding of prejudice to the creditor, the court may reopen a case so that debtors may "employ the remedy granted them by § 522(f)." *In re Tarrant*, 19 B.R. 360, 364 (Bankr.D.Alaska 1982). If, however, the creditor has been prejudiced by a long delay in reopening the case, the courts have applied the equitable defense of laches. *Id.* at 364.

Memberloan contends that laches should apply in this case due to the inordinate delay between the closing of the case and the bringing of the § 350(b) motion. The merits of this argument need not be reached unless it is established that the debtor has standing to seek relief pursuant to § 522(f).

■ Section 522(f) of the Code states: Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien *on an interest of the debtor in property* to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is (1) a judicial lien....

11 U.S.C. § 522(f) emphasis added. Interpreting the phrase "an interest of the debtor in property" according to its plain meaning leads to the conclusion that the debtor must have a present cognizable interest in the property for her to have standing to move the court pursuant to section 522(f). *In re Vincent and Sarah Montemurro*, 66 B.R. 124, 125 (Bankr.E.D.N.Y.1984). In

the case at bar, Carilli voluntarily sold her property five weeks before she sought relief from this court. It is indisputable that at the time she filed her motion she had relinquished all interests in the Woodbury Road property.

The policy behind §§ 522(d)(1) and 522(f) lends support to the conclusion that the debtor lacks standing to bring a proceeding under § 522(f). A perusal of the legislative history reveals that Congress intended § 522 to provide the debtor with the essentials necessary for a "fresh start." H.R. Rep. No. 95–595, 95th Cong., 2d Sess. 126–27 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6087–88. In furtherance of this policy, § 522(f) was drafted to protect the debtor's exemptions, H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 362 (1977), which include those items that Congress deemed necessary and essential to a fresh start. For example, section 522(d)(1) expressly exempts "[t]he debtor's aggregate interest not to exceed $7,500 in value, in real property or personal property that the debtor or a dependent of the debtor *uses as a residence.*" 11 U.S.C. § 522(d)(1) (1979) emphasis added. The purpose behind this exemption is to keep a roof over the heads of the debtor and his family. Therefore, "[e]ssential to the right of the homestead exemption is ... occupancy of the property." 3 Colliers on Bankr. 522.10 (15th ed.), *State Homestead Exemptions Laws*, 46 Yale L.J. 1023, 1028 (April 1937); Harkins, *Homestead Exemptions*, 63 Harv.L.Rev. 1289, 1296; 40 Am.Jur.2d Homestead § 72. When occupancy of the exempt property ceases, the purpose of the homestead ceases too. *Fontana v. Fontana*, 89 A.D.2d 843, 453 N.Y.S.2d 23 (2d Dept.1982).

This is not a new concept. Legislatures have long employed homestead exemptions as a way of keeping the debtor and his family from eviction. *In re Bouchard*, 11 B.R. 869, 873 (Bankr.S.D.Cal.1981). These jurisdictions hold that the homestead exemption terminates when the property is no longer occupied as the principal residence of the debtor. When the occupancy ends,

there is no longer any reason to retain the exemption, *Fontana v. Fontana,* 89 A.D.2d 843, 453 N.Y.S.2d 23 (2d Dept.1982) (interpreting N.Y.C.P.L.R. 5206(a)); *First Federal Savings & Loan Assoc. of Rochester v. Brown,* 78 A.D.2d 119, 434 N.Y.S.2d 306 (App.Div. 4th Dept.1980) (holding N.Y.C.P.L.R. § 5206(a) does not apply to surplus money from the sale of property foreclosed upon). It therefore follows that the proceeds of the sale of the exempt property are nonexempt because the reason for the exemption has disappeared. 35 C.J.S. 114 (1960). Consequently, the debtor loses his standing to seek relief pursuant to § 522(f). *In re Vincent and Sarah Montemurro,* 66 B.R. at 125.

In the case at bar, the debtor voluntarily sold her property five weeks before she ever sought relief under § 522(f). Therefore, debtor lacks standing to move this court for the sought-after relief and her motion to reopen her Chapter 7 case pursuant to § 350(b) is denied.

It is SO ORDERED.